*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHANNON M. HARTWICK,

      Plaintiff-Appellee,

v

CLARISSA DE LUNA,

      Defendant-Appellant.

UNPUBLISHED
April 20, 2023

No. 360956; 361535
Ingham Circuit Court
LC No. 20-000193-CH

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

In this consolidated[1] appeal, defendant appeals as of right the trial court's order granting plaintiff summary disposition under MCR 2.116(C)(10). Defendant raises procedural challenges to the trial court's jurisdiction, arguing that the court was divested of jurisdiction when it entered its May 24, 2022, order, and further argues that the trial court improperly resolved factual questions in the context of a motion under MCR 2.116(C)(10). Defendant also contends that the trial court erred by finding that defendant converted the realty subject to the underlying land contract and further erred by granting specific performance. For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case arises from a land contract entered between the parties, on November 29, 2018, where defendant agreed to sell real estate to plaintiff for $47,000. The land contract required plaintiff to pay an initial $3,000 down payment, and after that, plaintiff was to make monthly payments on the principal of the loan plus 10% per annum interest, with a final balloon payment of the remaining outstanding balance due after two years, with a minimum term of 13 months after the land contract was signed. The agreement included a due on sale clause, which provided that

---

[1] *Hartwick v DeLuna*, unpublished order of the Court of Appeals, entered June 3, 2022 (Docket Nos. 360956; 361535).

in the event of a sale or transfer of the property by plaintiff, defendant had the right to declare the full balance immediately payable.

The dispute arose in January of 2020 when plaintiff attempted to refinance the property through Union Home Mortgage. To effectuate the mortgage, the mortgage lender, plaintiff, and plaintiff's counsel contacted defendant requesting the payoff balance under the agreement. However, defendant refused to provide the requested payoff and, in response to the requests, asserted that plaintiff had breached the due on sale clause by way of attempted refinancing of the property. The record shows that it was not until after plaintiff instituted this action that defendant provided plaintiff with the payoff balance.

Plaintiff commenced this action on March 27, 2020, alleging breach of contract and entitlement to injunctive relief and an accounting of the amount owed under the land contract, and later amended her complaint to add claims for common law and statutory conversion. The record shows that plaintiff began escrowing the monthly payments in April of 2020.[2] On April 21, 2020, defendant emailed plaintiff the requested accounting, which included over $12,000 in fees, including costs for legal fees, accounting, administrative fees, return on investment, and billable hours. Later that year, defendant transferred the real property by quit claim deed to Clear Moon Production, LLC (Clear Moon), an entity owned by defendant, for the consideration of $1.

On April 29, 2021, defendant filed her motion for summary disposition under MCR 2.116(C)(10),[3] arguing, in relevant part, that plaintiff's breach of contract claim was barred by the doctrine of first breach, on the basis that plaintiff breached the land contract in January of 2020 by violating the contract's due on sale clause and the related statute, MCL 445.1623. Specifically, defendant averred that plaintiff was statutorily required under MCL 445.1623 to give defendant written notice or receive written consent before refinancing the property, and that her failure to do so permitted defendant to declare the full balance under the land contract immediately due and payable. According to defendant, plaintiff forfeited the land contract and extinguished her rights to the property by repeatedly breaching the terms of the agreement. Additionally, defendant alleged that plaintiff anticipatorily breached when she announced her intentions to stop the

_____

[2] In April of 2020, plaintiff began escrowing the monthly payments with her counsel. In August of 2020, defendant filed a separate action in the 55th District Court, seeking forfeiture of plaintiff's rights under the land contract. The court in that matter ordered plaintiff's escrowed payments to be filed with the court. The district court subsequently dismissed defendant's forfeiture action, on December 30, 2020, for lack of standing, finding that on July 18, 2020, before defendant filed the district court action, defendant transferred the real property by quit claim deed to Clear Moon Production, LLC.

[3] Defendant filed her first motion for summary disposition on November 9, 2020, her first amended motion on March 10, 2021, and second amended and most recent motion on April 29, 2021. Defendant moved for summary disposition pursuant to MCR 2.116(C)(1) (personal jurisdiction), (3) (service of process), (4) (subject matter jurisdiction), and (10). The trial court ultimately denied defendant's motion in its entirety. Defendant does not challenge the court's ruling related to her motion on appeal.

monthly payments in March of 2020, and further breached when she stopped paying the monthly dues from April of 2020 until the contract term ended in November of 2020.

Plaintiff subsequently moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that she was entitled to summary disposition on all counts of her amended complaint and requested that the court issue a mandatory injunction requiring defendant to convey the deed to plaintiff.[4] Plaintiff argued that defendant breached the land contract by failing to provide an accurate payoff balance within a reasonable time even though plaintiff only sought to mortgage the property after the land contract's 13-month minimum term had expired. Plaintiff asserted that because defendant breached the land contract, she sustained substantial damages, including the expenses associated with applying for a mortgage, such as obtaining a credit check and an appraisal of the property, and other damages resulting from her inability to close on the loan, such as the cost to maintain additional housing for her residence in Canada and the reduced interest rate she would have received by refinancing. Defendant's failure to provide the requested payoff excused plaintiff's subsequent breach of failing to pay the balloon payment under the contract. Plaintiff further alleged that she was entitled to summary disposition on her claims for common-law and statutory conversion, citing MCL 600.2919a(1)(a), because defendant converted plaintiff's equitable interest in the title to the property for her own use when defendant exercised wrongful control over plaintiff's equity interest by refusing to provide an accurate payoff and denying plaintiff access to her equity either through refinancing or sale of the underlying property.

Plaintiff also sought injunctive relief, specifically requesting that the court provide an equitable accounting reflecting the amount plaintiff owed under the land contract in the form of an order that could be recorded with the register of deeds. Additionally, plaintiff requested that the trial court enter a mandatory injunction requiring defendant to convey the deed to plaintiff upon her fulfillment of the court's order. Plaintiff cited MCL 566.34 for the proposition that defendant's fraudulent conveyance of the property to her entity, Clear Moon, was an avoidable transfer and that defendant was statutorily required by MCL 565.361 to provide plaintiff with the property deed upon payment of the land contract.

In response, defendant restated the allegations made in her prior motion for summary disposition and additionally argued that she was not obliged by the land contract to provide plaintiff with an accounting. Defendant contended that plaintiff's attempt to secure an accounting was outside the scope of the land contract and constituted a unilateral modification of the contract's terms. Defendant argued that plaintiff's claims for tort conversion failed as a matter of law because realty could not be converted. According to defendant, plaintiff was not entitled to injunctive relief because plaintiff forfeited the land contract and extinguished her rights therein. Defendant further alleged that plaintiff's new request for a mandatory injunction, requiring defendant to transfer the deed to plaintiff, was neither raised nor addressed in plaintiff's complaint or amended complaint.

---

[4] Plaintiff also argued that she was entitled to summary disposition on all counts of defendant's counterclaim. The trial court granted defendant's motion for voluntary dismissal of her counterclaim on December 17, 2021. Defendant does not raise issues related to her counterclaim on appeal.

Following oral arguments on the parties' cross-motions for summary disposition, the trial court entered its January 28, 2022 order, where the court denied defendant's and granted plaintiff's motions for summary disposition. The trial court granted plaintiff's motion in its entirety and entered a judgment in favor of plaintiff in the amount of $96,894.51, subject to set-off against the judgment for the balance owed under the land contract and amount escrowed by plaintiff, as detailed in the court's accounting. The court also granted plaintiff's request for a mandatory injunction, and ordered that defendant, as the manager and sole member of Clear Moon, execute a deed conveying the property from Clear Moon back to defendant, and following that conveyance, defendant was to deliver the deed to plaintiff. The order further permitted plaintiff to record the court's order and executed deed with the register of deeds, establishing a full conveyance of defendant's rights, title, and interest in the property to plaintiff. The court indicated in the order that an opinion containing its explanation for its rulings would be issued at a later date. On February 7, 2022, defendant filed her motion for reconsideration of the trial court's January judgment.

The trial court entered an order on March 31, 2022, which contained the promised explanation for its summary disposition ruling embodied in the January order, but did not address defendant's prior motion for reconsideration of the January order. The trial court found that plaintiff was entitled to summary disposition on all counts of her complaint, ruling that defendant materially breached the land contract by failing to provide plaintiff with the payoff under the land contract. The court explained that defendant's failure to provide the requested payoff denied plaintiff access to her equity through refinancing or sale of the property and excused plaintiff from making the balloon payment under the contract. The court rejected defendant's contentions that plaintiff breached the due on sale clause under the land contract, reasoning that the record was devoid of a material breach by plaintiff, considering plaintiff neither sold, transferred, nor encumbered the property in any way.

The trial court also found that defendant converted plaintiff's equity to her own use by refusing to provide the payoff balance, and found that plaintiff was entitled to an accounting of the land contract balance. The court granted plaintiff's request for injunctive relief, finding that defendant had not succeeded on the merits of any allegations, and that plaintiff would be irreparably harmed if the mandatory injunction was not issued. The court acknowledged that the mandatory injunction, which required defendant to provide the deed to plaintiff upon her fulfillment of the court order, would entail some action or participation by nonparty Clear Moon, but nevertheless found that the injunction was an appropriate remedy under the circumstances. The court found that because defendant conveyed her interest in the property to Clear Moon, a company owned entirely by defendant, she was statutorily required to provide plaintiff with the deed upon payment of the land contract under MCL 566.34 of the Michigan Uniform Transaction Act (MUVTA), MCL 566.31 *et seq*.

Defendant filed her first claim of appeal on April 8, 2022. On that same day, plaintiff submitted her motion for reconsideration, dated April 8, 2022, and filed with the court on April 11, 2022. In plaintiff's motion, she sought clarification regarding whether the court intended for the March order to supplement or replace the January judgment or whether the court contemplated post-judgment proceedings to address other matters. Plaintiff also asserted that the March order neglected to address defendant's February motion for reconsideration of the January order.

The trial court granted plaintiff's motion for reconsideration and reopened the case on May 24, 2022, to enter a nunc pro tunc final order, clarifying the court's intention to harmonize the January and March orders and to resolve defendant's February motion for reconsideration. The trial court noted that while the court intended for the March order to be the final order, it failed to dispose of all the claims of the parties, including defendant's pending motion for reconsideration. The court ultimately denied defendant's motion for reconsideration and further ordered that the March and January orders, in conjunction, represented the court's ruling regarding the parties' cross-motions for summary disposition. The following day, defendant filed her second claim of appeal, and the two appeals were consolidated.

On appeal, defendant challenges the trial court's jurisdiction at the time it entered the May order, arguing that the court was divested of jurisdiction following the filing of the claim of appeal from the March order. Defendant further argues that the court erroneously resolved factual questions when granting plaintiff's summary disposition motion under MCR 2.116(C)(10), and further erred by awarding specific performance of the property and a judgment for conversion.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *In re Estate of Moukalled*, 269 Mich App 708, 713; 714 NW2d 400 (2006). "An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion." *Colen v Colen*, 331 Mich App 295, 304; 952 NW2d 558 (2020) (quotation marks and citation omitted). An abuse of discretion occurs when the trial court chooses an outcome outside the range of reasonable and principled outcomes. *Id*.

However, the trial court's decision on a motion for summary disposition is subject to review de novo. *Willis v Deerfield Twp*, 257 Mich App 541, 548; 669 NW2d 279 (2003). Issues related to whether a trial court had jurisdiction presents a question of law that this Court reviews de novo. *Atchison v Atchison*, 256 Mich App 531, 534; 664 NW2d 249 (2003). This Court reviews de novo questions of law related to the interpretation of court rules, *In re Estate of Moukalled*, 269 Mich App at 713, statutes, *id*., and contracts, *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 408; 646 NW2d 170 (2002). This Court "applies principles of statutory interpretation to the interpretation of court rules. When the language is unambiguous, we must enforce the meaning plainly expressed, and judicial construction is not permitted." *Hinkle v Wayne Co Clerk*, 467 Mich 337, 340; 654 NW2d 315 (2002). Likewise, this Court reviews equitable actions under the de novo standard. *Samuel D Begola Servs, Inc v Wild Brothers*, 210 Mich App 636, 639; 534 NW2d 217 (1995) (citations omitted).

## III. JURISDICTION OF THE TRIAL COURT

Defendant argues that the trial court's May 24, 2022, order should be vacated because the court was divested of jurisdiction after defendant appealed the March 31, 2022, order, which defendant argues was a final order.

Even if we were to conclude that the March order was a final order,[5] as counsel conceded at argument before this Court, vacating the court's May order would make no difference on our resolution of the merits. All the May order did was resolve defendant's pending motion for reconsideration, which defendant does not contest on appeal, and to clarify that the January and March orders, collectively, represented the court's ruling on the parties' cross-motions for summary disposition. The May order did not operate to change the substance of the court's prior orders, nor did it alter or amend the court's basis for its findings.

## IV. SUMMARY DISPOSITION

Defendant argues that the trial court erred when it awarded summary disposition to plaintiff under MCR 2.116(C)(10) because the court resolved factual questions regarding plaintiff's claims that she sustained certain damages resulting from defendant's purported breach of the land contract.

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract (2) the other party breached the contract, and (3) the claimant sustained damages as a result of the breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "[C]ausation of damages is an essential element of any breach of contract action." *Id*. To establish a causal link between the asserted breach of contract and claimed damages, "a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 119; 839 NW2d 223 (2013).

The trial court properly awarded summary disposition to plaintiff for her breach of contract claims, as there was no genuine issue of material fact that plaintiff sustained damages as a result of defendant's breach of the land contract. A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of a claim" and may only be granted "when there is no genuine issue of material fact." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (citations omitted). "A genuine issue of material fact exists when the record leave[s] open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502

---

[5] The record is somewhat unclear about which order was the true "final order." A court enters a "final order" when it "disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order." MCR 7.202(6)(a)(*i*). The trial court entered its January judgment after denying defendant's motion and granting plaintiff's motion in its entirety. While the January order explicitly provided that the "order resolves the last pending claim and closes the case," the court also prefaced the order by stating that the order was "to be supplemented in the Court's forthcoming written opinion," referencing the anticipated March order. The January order, in effect, disposed of all the claims and adjudicated all the rights and liabilities of the parties. MCR 7.202(6)(a)(*i*). "[T]he right to appeal is determined not by the form of th[e] order or decree, but by its effect." *Kuizema v Breen*, 316 Mich 492, 495; 25 NW2d 596 (1947) (quotation marks and citation omitted). And, this Court is not bound by the lower court's characterization or designation of the order when determining whether the order is, in fact, a final order. See *McCarthy & Assoc, Inc v Washburn*, 194 Mich App 676, 678-681; 488 NW2d 785 (1992).

Mich 751, 761; 918 NW2d 785 (2018) (alteration in original; quotation marks and citation omitted). When reviewing such a motion, the trial court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *El-Khalil*, 504 Mich 152 at 160. After the moving party supports its motion with such evidence, the burden shifts to the nonmoving party to demonstrate that a genuine issue of fact exists. *Willis*, 257 Mich App at 550. The nonmoving party "may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). See also *Ghaffari v Turner Constr Co*, 268 Mich App 460, 464; 708 NW2d 448 (2005) ("Speculation and conjecture are insufficient to create an issue of material fact."). While the trial court may not make factual findings when deciding a motion for summary disposition, when no genuine issue of material fact exists, summary disposition is appropriate. *Ghaffari*, 268 Mich App at 463. "[T]he disputed factual issue must be material to the dispositive legal claim." *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 333; 671 NW2d 132 (2003).

Defendant first argues that the trial court improperly resolved factual issues of causation when it found that plaintiff sustained damages for duplicative housing costs because of defendant's purported breach of the land contract. However, the record supports the trial court's decision to grant plaintiff's motion for summary disposition, as defendant failed to satisfy her burden of demonstrating that an issue of material fact existed. In moving for summary disposition, plaintiff set forth by affidavit that she relocated to Canada for work in October of 2020, and because defendant hindered her ability to refinance and sell the property, she was forced to pay housing costs both for her residence in Canada and the property under the land contract. Plaintiff also attested that due to defendant's continued refusal to provide an accurate payoff balance, plaintiff could not afford to maintain two homes, and in June of 2021, she terminated her lease in Canada, forfeiting her security deposit, and moved back to Michigan. Plaintiff also attached a detailed accounting statement that itemized the expenses she incurred for rental and related utilities in Canada, and produced an email evidencing that defendant knew plaintiff was relying on her to provide the payoff balance within a reasonable time because plaintiff planned to move to Canada. In plaintiff's February 5, 2020 email to defendant, she notified defendant that she was relocating to Canada for work and that defendant's noncompliance was interfering with her job transfer. Plaintiff provided circumstantial proof facilitating reasonable inferences of causation. *Gorman*, 302 Mich App 113 at 119.

The record shows that although defendant had the opportunity to rebut plaintiff's evidence, she failed to offer any evidence indicating that plaintiff did not sustain damages for duplicative housing. In fact, defendant's response neither addressed whether plaintiff sustained any damages, much less damages related to duplicative housing costs, nor disputed that defendant's breach caused plaintiff's purported damages. Rather, defendant made conclusory allegations that no damages were owed because plaintiff was the first to breach the land contract. Defendant submitted a sworn affidavit that contained nothing more than cursory arguments and self-serving statements of opinion, providing no factual support for her claims, and without addressing plaintiff's arguments. Thus, defendant failed to satisfy her burden under MCR 2.116(G)(4) of responding to plaintiff's properly supported motion for summary disposition. *McCormic v Auto Club Ins Ass'n*, 202 Mich App 233, 237; 507 NW2d 741 (1993) ("[W]here the opposing party fails

to come forward with evidence, beyond allegations or denials in the pleadings, to establish the existence of a material factual dispute, the motion is properly granted.").

Similarly, the trial court correctly ruled on the basis of the documentary evidence submitted that defendant failed to show that there was a question of fact regarding the accuracy of plaintiff's proposed accounting. Defendant argues that the trial court made factual findings when it adopted plaintiff's proposed accounting related to the adjusted interest rate amount and time frame of when plaintiff would have closed on the mortgage. According to the land contract, plaintiff was to make monthly payments on the principal of the loan plus 10% per annum interest. Plaintiff alleged in her motion for summary disposition that the mortgage company guaranteed an interest rate of 4.125% and that had she been able to obtain the mortgage, her costs would have been reduced by virtue of the new interest rate. Plaintiff's motion attached an accounting statement, which provided for the adjusted interest rate beginning on January 24, 2020, reflecting the date she allegedly would have been able to close on the mortgage had defendant not breached the agreement. Plaintiff supported her claims with documentary evidence, including a copy of the mortgage company's interest rate generated when she sought to refinance the property. Plaintiff also produced a letter that she received from defendant, dated February 5, 2020, where defendant acknowledged that plaintiff applied for the loan on January 7, 2020, and that, ten days later, the mortgage lender contacted defendant requesting the payoff balance under the land contract.

Because plaintiff carried her initial burden of supporting her motion with documentary evidence, the burden shifted to defendant to respond with documentary evidence of her own. MCR 2.116(G)(3) and (4). However, in her response defendant only contested whether she owed plaintiff an accounting, alleging that an accounting was outside the scope of the land contract. Otherwise, defendant's response in no way addressed the substance of plaintiff's proposed accounting. Indeed, defendant did not challenge whether plaintiff was entitled to the reduced interest rate or the date plaintiff alleged that she would have been able to close on the mortgage. The record is similarly absent of any accounting submitted by defendant. Because defendant failed to show that a genuine issue of material fact existed and, therefore, failed to satisfy her burden under MCR 2.116(G)(4) of responding to plaintiff's properly supported motion, the trial court did not err by granting plaintiff's motion for summary disposition under MCR 2.116(C)(10). *Ghaffari*, 268 Mich App at 463.

## V. CONVERSION

We next address defendant's argument that the trial court erred by finding that defendant converted plaintiff's equitable interest in the legal title of the real property under the land contract.

Conversion, both at common-law and by statute, is an intentional tort, requiring a showing of "any distinct act of domain wrongfully exerted over another's *personal property* in denial of or inconsistent with his rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citations omitted; emphasis added). A claim for statutory conversion additionally provides for treble damages to compensate a plaintiff for another person's "converting property to the other person's own use." MCL 600.2919a(1)(a). An action for conversion may not be maintained if defendant's right to possession was greater than that of plaintiffs. *Rohe Scientific Corp v Nat'l Bank of Detroit*, 133 Mich App 462, 468; 350 NW2d 280 (1984), mod on other ground on reh 135 Mich App 777 (1984).

While an action for conversion will always lie for tangible personal property, *Eadus v Hunter*, 268 Mich 233, 237; 256 NW2d 323 (1934), conversion of intangible personal property may only be raised when a plaintiff's ownership interest in the intangible property is, in some respect, linked to tangible property, *Sarver v Detroit Edison Co*, 225 Mich App 580, 586; 571 NW2d 759 (1997). See, e.g., *Miracle Boot Puller Co, Ltd v Plastray Corp*, 57 Mich App 443, 450-451; 225 NW2d 800 (1975) (patent royalties); *Tuuk v Andersen*, 21 Mich App 1, 13; 175 NW2d 322 (1969) (right to lease a machine); and *Warren Tool Co v Stephenson*, 11 Mich App 274, 276; 161 NW2d 133 (1968) (negotiable instrument). However, it is well-settled that real property can never be converted. *Alisa A Peskin-Shepherd, PLLC v Blume*, 509 Mich 1046; 974 NW2d 835 (2022).

The trial court erred by finding that defendant converted plaintiff's equitable interest in realty under the land contract. The trial court found that defendant converted plaintiff's equitable interest under the land contract when defendant denied plaintiff access to her equity by refusing to provide a payoff balance. A land contract[6] is a form of an executory contract, and once entered by the parties, equitable title to the real estate passes to the purchaser/vendee, while the legal title remains in the vendor/seller as security for the full payment of the purchase price. *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999); *Barker v Klingler*, 302 Mich 282, 288; 4 NW2d 596 (1942). A vendee's "equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mtg Corp*, 469 Mich 608, 614; 677 NW2d 829 (2004). See also *Bowen v Lansing*, 129 Mich 117, 120; 88 NW 384 (1901) ("vendee is the cestui que trust as to the legal title, and that his interest is real property, and descends to his heirs (in equity)"). At the time of the contract's execution, "the vendee has, in a real sense, purchased the relevant property," and that fact will not be negated by a vendee's default nor by a vendor's holding of the legal title until complete performance of all contractual obligations by the vendee is made. *Graves*, 469 Mich at 616-617. Upon a vendee's complete performance under a land contract, i.e., full payment and satisfaction of any other conditions, the vendor is obligated to convey legal title to the vendee. MCL 565.361(1). Plaintiff's claim fails as a matter of law, as an action for conversion cannot lie for real property.

While plaintiff concedes that her interest under the land contract, as a vendee, was a real property interest, plaintiff argues that under the doctrine of equitable conversion, the legal title to the property held by the vendor in a land contract is intangible personal property that may be subject to a cause of action for tort conversion. Under the doctrine of equitable conversion, "the vendee's interest under the contract becomes realty and the vendor's interest under the contract constitutes personalty. In equity the purchaser is regarded as the owner subject to liability for the unpaid price and the vendor as holding the legal title in trust for him from the time a valid

---

[6] It is important to distinguish a contract for the sale of land from a "land contract." A contract for the sale of land simply involves a purchase agreement, while a "land contract" refers to " 'agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer.' " *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999), quoting 1 Cameron, Michigan Real Property Law (2d ed), § 16.1, p 582.

agreement for the purchase of land is entered into." *Charter Twp of Pittsfield v Saline*, 103 Mich App 99, 103; 302 NW2d 608 (1981) (quotation marks and citation omitted). On this basis, plaintiff argues that defendant, as vendor, tortiously converted her personalty interest in the legal title by denying plaintiff access to her equity.

Despite plaintiff's contentions, under the doctrine of equitable conversion, it is not the vendor's interest in the "legal title" that becomes personal property. Rather, it is the vendor's interest under the land contract, i.e., the right to receive payment, which constitutes personalty. *Brooks v Gillow*, 352 Mich 189, 193; 89 NW2d 457 (1958); *Graves*, 469 Mich at 616-617. As explained in *Graves*, a vendor's legal title "is only a trust coupled with an interest by way of security for a debt" and represents "but an ordinary money debt, secured by the contract." *Graves*, 469 Mich at 616-617 (quotation marks and citations omitted). Thus, the legal title to the real property remained with defendant only as security to ensure satisfaction of her personalty interest of payment under the land contract. *Id.; Bowen*, 129 Mich at 120. In any event, the legal title of the property constitutes realty, which may not be converted. *Eadus*, 268 Mich at 237 ("Trover lies only for the conversion of personal property.").

Even if we were to find that defendant's interest in the legal title under the land contract was personalty, defendant could not have converted her *own* property interest, as the gist of the tort of conversion is the interference with control of *another's* personal property. *Magley*, 325 Mich App at 314. Moreover, plaintiff's equitable title under the land contract could not be enforced in a conversion action against defendant, who would have shown the greater possession of legal title. *Rohe Scientific Corp*, 133 Mich App at 468 ("If defendant's right to possession was greater than that of plaintiff's, plaintiff could not maintain an action for conversion."). Plaintiff's action for common-law and statutory conversion fails as a matter of law. Thus, the trial court erred in granting summary disposition and related damages in favor of plaintiff on the basis of her conversion claims.

## VI. SPECIFIC PERFORMANCE

Defendant argues that the trial court erred by granting a mandatory injunction, which directed defendant, on behalf of Clear Moon, to execute a deed conveying the property from Clear Moon to defendant and further ordering defendant to deliver the deed to plaintiff. Specifically, defendant argues that the trial court's mandatory injunction amounted to specific performance, a remedy that plaintiff never sought in her complaint, as required by MCR 2.111(B)(2), and, therefore, never put defendant on notice of the claims. Defendant further contends that the trial court erred because the court did not have jurisdiction over nonparty Clear Moon.

"Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice." *Thermatool Corp v Borzym*, 227 Mich App 366, 375; 575 NW2d 334 (1998). The principles of equity not only permit but oblige a court to enforce the equities of the parties in such a manner as to "put the parties as nearly as possible in the position that they would have occupied had the conveyance of the real property occurred when required by the contract." *Giannetti v Cornillie*, 209 Mich App 96, 98; 530 NW2d 121 (1995), citing *Godwin v Lindbert*, 101 Mich App 754, 758; 300 NW2d 514 (1980). The power to grant the equitable remedy of specific performance rests within the sound discretion of the court. *Zurcher*, 238 Mich App at 300 (quotation marks and citation omitted). See also *Czeizler v Radke*, 309 Mich 349, 358;

-10-

15 NW2d 665 (1944) (explaining that specific performance is a remedy of grace and not a matter of right, and whether it should be granted depends upon peculiar circumstances of each case and rests in the sound discretion of trial court). Where a plaintiff is entitled to a decree of specific performance, "the normal method of allocating the respective obligations is by an equitable accounting[,]" and in the court's decree, the court may grant "additional or incidental relief as is necessary to adequately sort out the equities of the parties." *Brotman v Roelofs*, 70 Mich App 719, 730, 732; 246 NW2d 368 (1976). The trial court may also order that a judgment be satisfied by "setoff" of a mutual claim. *Mahesh v Mills*, 237 Mich App 359, 361; 602 NW2d 618 (1999). A setoff is "a legal or equitable remedy that may occur when two [parties] that owe money to each other apply their mutual debts against each other." *In re Conservatorship of Murray*, 336 Mich App 234, 261; 970 NW2d 372 (2021) (quotation marks and citation omitted).

It is undisputed that the parties entered into the land contract on November 29, 2018, and that the terms of the agreement permitted plaintiff to satisfy her obligations under the contract as early as 13 months after the contract's execution. In accord with the 13-month minimum contract term, in late January of 2020, plaintiff sought to refinance the property and pay the remaining balance owed under the contract. The record shows that defendant consistently refused to provide plaintiff with the payoff balance, preventing her from obtaining the mortgage. Even more, months after plaintiff commenced the instant action, defendant conveyed the property to Clear Moon, an entity owned and operated entirely by defendant. The trial court found that defendant breached the land contract by failing to give plaintiff the requested payoff balance.

The trial court had the discretionary authority to order defendant's conveyance of legal title to plaintiff upon plaintiff's fulfillment of the court's order. In fact, we find no better way for the court to put the parties in the position they would have occupied had defendant not breached the contract other than to order the parties to fulfill their obligations under the land contract, as the trial court did here by ordering specific performance. *Giannetti*, 209 Mich App at 98. The trial court issued the mandatory injunction order, which not only ordered defendant to convey legal title to plaintiff but conditioned defendant's performance on plaintiff's duty to satisfy the terms of the land contract by paying the remaining balance owed to defendant. In comparison, had defendant's breach never occurred, and plaintiff successfully refinanced the property and used the proceeds to satisfy the balance owed under the land contract, i.e., in complete satisfaction of plaintiff's obligation under the contract, defendant would have been statutorily required to convey legal title to plaintiff pursuant to MCL 565.361(1).[7] The court's injunctive order put the parties in the same position they would have been had they fulfilled their obligations under the land contract. Therefore, we find no error in the court's ruling.

For these same reasons, we hold that the trial court did not err by ordering defendant to execute a deed on behalf of Clear Moon to convey the property back to defendant. "Circuit courts

---

[7] MCL 565.361(1) provides that "[w]hen the vendee named in a land contract, or his or her heirs, successors, or assigns, has fully paid and performed the obligations under the contract that are a precondition to the sale and conveyance of the land, the vendor named in the contract shall make conveyance of the land to the vendee by a deed of conveyance as specified in the land contract, or, if the form of the deed is not specified in the land contract, by an appropriate deed."

-11-

have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." MCL 600.611. MCL 565.361(2) is instructive, as the statute states that the vendor remains fully obligated to deliver a deed of conveyance to the vendee upon complete payment and satisfaction under the land contract, even when the vendor has assigned their interest, sold, or mortgaged the property. Clearly, defendant was not relinquished of her responsibility to deliver a proper deed to plaintiff simply because she disposed of the property in some way.

Additionally, the trial court found that because defendant fraudulently conveyed her interest in the property to Clear Moon, an entity owned entirely by defendant, she was required by statute to provide plaintiff with a deed upon payment of the land contract under MCL 566.34 of the MUVTA. Under the MUVTA, MCL 566.31 *et seq*.,[8] a creditor may seek to void a debtor's fraudulent asset transfer. See *Mather Investors, LLC v Larson*, 271 Mich App 254, 259; 720 NW2d 575 (2006). MCL 566.34(1)(a) provides that "a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer. . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." To determine whether "actual intent" exists under this subsection, consideration may be given to several factors, including, in relevant part, whether the "transfer" was to an insider, the "debtor retained possession or control of the property transferred after transfer," and "the debtor had been sued or threatened with suit" "[b]efore the transfer was made[.]" MCL 566.34(2)(a), (b), and (d).

The record supports a conclusion that defendant conveyed the property with the actual intent to "hinder, delay, or defraud" plaintiff in violation of the MUVTA. The record shows that defendant quitclaim deeded the property to an insider,[9] Clear Moon, an entity owned entirely by defendant, for the mere consideration of $1. MCL 566.34(2)(a). By conveying the property to Clear Moon, defendant retained possession and control of the property even after the transfer. MCL 566.34(2)(b). The record shows that defendant conveyed the property several months *after*

---

[8] The MUVTA defines a "creditor" to mean "a person that has a claim" and a "debtor" as "a person that is liable on a claim." MCL 566.31(d) and (f).

[9] Notably, the MUVTA does not explicitly define an "insider" with respect to relationships arising from a limited liability company. Nevertheless, we find that defendant's conveyance to the limited liability company, Clear Moon, is tantamount to an "insider" deal under the MUVTA because defendant was the sole owner and operator of Clear Moon. The MUVTA defines the term "insider" in MCL 566.31(i) as including five categories of an "insider" dependent on whether the debtor was an individual, corporation, partnership, affiliate, or managing agent of the debtor. MCL 566.31(i)(*i*) through (*iv*). The word "includes" may be a term of enlargement or limitation. *Sharp v Benton Harbor*, 292 Mich App 351, 355; 806 NW2d 760 (2011) (quotation marks and citation omitted). We hold that the Legislature did not intend for the word "includes" to limit the meaning of the word "insider" to the enumerated categories under MCL 566.31(i) because such a reading would conflict with the MUVTA's intended purpose of "prevent[ing] debtors from transferring their property in bad faith before creditors can reach it." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014) (quotation marks and citation omitted).

plaintiff filed suit. MCL 566.34(2)(d). Despite defendant's contentions, a claim under the MUVTA need not be reduced to judgment or undisputed. MCL 566.31(c). Based on this background, we hold that defendant fraudulently conveyed the property to an entity she solely owns and controls in her attempt to hinder, delay, or defraud plaintiff. And, defendant's fraudulent transfer gave rise to the statutorily enumerated remedies, including "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" or "[a]ny other relief the court determines appropriate." MCL 566.37(1)(a) and (c)(*iii*). Therefore, the trial court did not err by requiring defendant, on behalf of Clear Moon, to reconvey the property back to defendant in its decree of specific performance.

Defendant further argues that the trial court erred by granting specific performance because plaintiff never requested that relief in her complaint. However, MCR 2.601(A) provides that "every final judgment may grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded that relief in his or her pleadings."[10] Defendant's argument also ignores the fact that she conveyed her property to Clear Moon *after* plaintiff filed her complaint and amended complaint.

Moreover, to the extent that defendant challenges the "setoff" in the trial court's judgment or argues that the court's remedy operated to enforce a foreclosure sale, citing MCL 600.2805 *et seq.*, we conclude that defendant abandoned these arguments for failing to properly argue the merits of these claims. "A party abandons a claim when it fails to make a meaningful argument in support of its position." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). Regarding defendant's challenge to the trial court's judgment, which provided that the judgment awarded in favor of plaintiff was to be setoff, in relevant part, by the balance plaintiff owed under the land contract. On appeal, defendant simply argues that the principle of setoff cannot apply because the price of the deed was not a damage. In making this argument, defendant provides no additional analysis to her claim, nor does she cite any caselaw, rule, or authority supporting her contentions. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (alterations in original; quotation marks and citation omitted). Turning to defendant's argument that the court's order effectively enforced a foreclosure sale, defendant provides no more than her conclusory statement and citation to MCL 600.2805 *et seq.*, to support her contentions of the court's purported error. Defendant has abandoned these issues for her failure to brief them properly. *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (stating that failure to brief an issue constitutes abandonment). Thus, we decline to address these issues.

VII. CONCLUSION

---

[10] Although not relevant to this appeal, we do note that this is not true in matters concerning judgment by default. Generally, "[a] judgment by default may not be different in kind from, nor exceed in amount, the relief demanded in the pleading[.]" MCR 2.601(B).

The trial court erred by granting plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(10) as to plaintiff's conversion claims. Accordingly, we reverse that portion of the court's order, but in all other respects, affirm the order and remand for further proceedings consistent with this opinion.[11] We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica

---

[11] Defendant additionally argues that this case should be assigned to a different judge on remand, alleging that the court was hostile toward her. However, defendant has not overcome the strong presumption of judicial impartiality. A party seeking disqualification of a judge based on bias or prejudice bears the burden of proof and must overcome the strong presumption of judicial impartiality. MCR 2.003(B); *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). While defendant directs us to the motion hearing held over Zoom on November 30, 2021, where the court allegedly refused to allow her to ask a question, defendant conceals the fact that, at that hearing, she disregarded the court's directives and engaged in disruptive behaviors. Even more, the record shows that the court permitted defendant to ask a question but rejected its form. Defendant points to the court's statement made to a spectator who interjected during the hearing, where the court responded that the spectator did not have permission to address the court. Despite these contentions, "[a] judge's ordinary efforts at courtroom administration," even if "stern and short-tempered," are "immune" from charges of bias and partiality. *Liteky v United States*, 510 US 540, 556; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Defendant also asserts that the court's statements in its rulings that defendant's actions were disrespectful and disingenuous demonstrates a stigma that would be "impossible for Defendant to overcome" on remand. However, a judge's opinions formed on the basis of facts introduced or events that occur during the proceedings do not constitute bias or prejudice unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Cain*, 451 Mich at 496 (quotation marks and citation omitted); *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). Defendant has not overcome the strong presumption of judicial impartiality.